IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

\* \* \* \* \* \* \* \* \*

CARLO B., personally and as guardian
and next friend for C.B.,

    Plaintiff,

vs.

BLUE CROSS BLUE SHIELD OF
MASSACHUSETTS, et al.,

    Defendants

)
)
)
)
)
)
)
)
)
)
)

Civil No. 2:08-CV-0059 BSJ

**MEMORANDUM OPINION
& ORDER**

| **FILED** |
| CLERK, U.S. DISTRICT COURT |
| March 26, 2010 (2:27pm) |
| DISTRICT OF UTAH |

\* \* \* \* \* \* \* \* \*

  This action arises under the Employee Retirement Income Security Act of 1974, 29

U.S.C. §§ 1001 et seq. (2006 ed.) ("ERISA"). Plaintiff contests the denial of health insurance

benefits under a group health insurance policy issued by Blue Cross Blue Shield of

Massachusetts ("Blue Cross") covering residential mental health treatment received by Plaintiff's

daughter ("C.B.") at Moonridge Academy, a licensed residential treatment center for adolescent

girls with mental, emotional and substance abuse problems, from February 10, 2006 through the

end of August 2006.[1] Following a November 2006 review of medical records submitted by

Moonridge, Blue Cross denied reimbursement for residential treatment at Moonridge because in

the opinion of Blue Cross' reviewing physician, C.B. "did not meet criteria on admission to

Moonridge for a stay in psychiatric subacute care or psychiatric residential treatment center,"

specifically the "criteria for clinical indications, or risk, including treatment history and support

---

[1]Neither Plaintiff nor Moonridge submitted claims or medical records to Blue Cross concerning C.B.'s
residential treatment after August of 2006, though she remained at Moonridge until March 29, 2007.

system."

Plaintiff appealed this initial denial of benefits within Blue Cross, and by letter dated January 2, 2007, Blue Cross again denied reimbursement. "Although [C.B.] had had clinical indications including symptoms or behavior: chronic/persistent danger to self/others given her long standing self mutilation," Blue Cross explained, " those symptoms had not been active for weeks," and that by February 2006 C.B. "did not meet criteria for admission to acute residential treatment." Instead, Blue Cross opined, "she met criteria for outpatient therapy."

Plaintiff appealed again, this time to the Office of Patient Protection ("OPP") in the Department of Public Health of the Commonwealth of Massachusetts, pursuant to Mass. Gen. Laws c. 1760 § 14, which in turn delegated the review of plaintiff's claim to Independent Medical Expert Consulting Services, Inc. ("IMEDECS"), an independent external review agency. IMEDECS reviewed the medical records that had previously been submitted to Blue Cross and concluded that "[a]cute residential treatment was clearly not medically necessary," and that at the time of her admission in February 2006, C.B. "could have transitioned to a level of care lower than that of acute residential such as a partial hospitalization program."

Plaintiff now seeks judicial review pursuant to § 502 of ERISA, 29 U.S.C. § 1132(a)(1)(B) and (e)(1), of Blue Cross' denial of benefits as affirmed by the OPP.[2] The parties filed cross-motions for summary judgment, which were briefed and argued at a hearing on

---

[2] 29 U.S.C. § 1132(a) reads in pertinent part: "A civil action may be brought — (1) by a participant or beneficiary . . . (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan . . . ."
    Blue Cross points out that "in instances where the member elects to take a voluntary appeal to OPP, Blue Cross Subscriber Certificates expressly make OPP's decision the final administrative decision on the member's claim." (Defendant's Memorandum on the Massachusetts State Administrative Procedure Act, filed November 14, 2008 (dkt. no. 37), at 5.) An ERISA plan participant may then "appeal that administrative decision to the state or federal court under 29 U.S.C. § 1132." (*Id.* at 6 (citing *Rush Prudential HMO, Inc. v. Moran*, 536 U.S. 355, 379-80 (2002)).)

Octiber 28, 2008.  This court took the matter under advisement and requested supplemental

memoranda concerning judicial review of the Massachusetts OPP external review process.  (*See*

Minute Entry, dated October 28, 2008 (dkt. no. 36).)   Several supplemental memoranda were

subsequently filed (dkt. nos. 37, 38, 39, 40, 41), and reviewed by this court.  Three notices of

supplemental authority were also filed with the court (dkt. nos. 42, 43, 44), with copies of or

citations to more recent case law.

The health benefits at issue in this case are described in the Blue Choice New England

Self-Referred Coverage Subscriber Certificate, which requires that "[a]ll covered services . . .

 must be medically necessary and appropriate for your specific health care needs."  The Blue

Choice Subscriber Certificate makes medical necessity an explicit requirement for coverage of

residential mental health treatment, specifying that Blue Cross provides benefits "for medically

necessary services to diagnose and/or treat mental conditions" and that mental health benefits

include inpatient admissions "for as many days as are medically necessary."

The Blue Choice Subscriber Certificate defines "medically necessary" treatment to mean

that "all covered services must be consistent with generally accepted principals of professional

medical practice."

> Blue Cross and Blue Shield decides which covered services are medically
> necessary and appropriate for you by using the following guidelines.  All health
> care services must be required to diagnose or treat your illness, injury, symptom,
> complaint or condition and they must also be:
>
> • Consistent with the diagnosis and treatment of your condition and in accordance
> with Blue Cross and Blue Shield medical policy and medical technology
> assessment guidelines.
>
> • Essential to improve your net health outcome and as beneficial as any
> established alternatives covered by this contract. This means that if Blue Cross

and Blue Shield determines that your treatment is more costly than an alternative treatment, benefits are provided for the amount that would have been provided for the least expensive alternative treatment that meets your needs. In this case, you pay the difference between the claim payment and the actual charge.

• As cost effective as any established alternatives and consistent with the level of skilled services that are furnished.

• Furnished in the least intensive type of medical care setting required by your medical condition.  It is not a service that: is furnished solely for your convenience or religious preference or the convenience of your family or health care provider; promotes athletic achievements or a desired lifestyle; improves your appearance or how you feel about your appearance; or increases or enhances your environmental or personal comfort.

In addition, the Premium Account Agreement between Blue Cross and Plaintiff's

employer provides that Blue Cross is granted

> full discretionary authority to make decisions regarding the amount, form and timing of benefits; to conduct medical necessity review; to apply utilization management; to exercise fair and impartial review of denied claims for services; and to resolve any other matter under the benefits plan which is raised by a Member . . . regarding entitlement to benefits as described in the Subscriber Certificates for your benefits plan. All determinations of Blue Cross and Blue Shield with respect to any matter within its assigned responsibility will be conclusive and binding unless it can be shown that the interpretation was arbitrary or capricious.

The contractual terms defining the Plaintiff's health benefit coverage thus require that  medical

treatment be found to be "medically necessary" to be eligible for reimbursement, and vest Blue

Cross with "full discretionary authority" to make that determination.

As the Supreme Court explained in *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101,

115 (1989), "[A] denial of benefits challenged under [ERISA] is to be reviewed under a *de novo*

standard unless the benefit plan gives the administrator or fiduciary discretionary authority to

determine eligibility for benefits or to construe the terms of the plan."  If the plan administrator

has such discretionary authority, "'then, absent procedural irregularities, the denial of benefits is reviewed under an arbitrary and capricious standard.'" *Hancock v. Metropolitan Life Ins. Co.*, 590 F.3d 1141, 1146 (10th Cir. 2009) (quoting *Kellogg v. Metro. Life Ins. Co.*, 549 F.3d 818, 825 (10th Cir. 2008)). "Under this arbitrary and capricious standard, we ask whether the administrator's decision was 'reasonable and made in good faith,'" *Phelan v. Wyoming Associated Builders*, 574 F.3d 1250, 1256 (10th Cir. 2009) (quoting *Flinders v. Workforce Stab. Plan of Phillips Petrol. Co.*, 491 F.3d 1180, 1193 (10th Cir. 2007)), and applying this standard includes deciding whether the decision is supported by substantial evidence. *See Adamson v. Unum Life Ins. Co. of Am.*, 455 F.3d 1209, 1212 (10th Cir. 2006). . Substantial evidence is less than a preponderance, but more than a scintilla. *Adamson*, 455 F.3d at 1212.

This deferential standard of review applies even where, as here, an inherent conflict of interest arises because "the administrator of the plan was also its insurer." *Hancock*, 590 F.3d at 1155.[3]

Thus the question now before this court is whether the OPP acted arbitrarily and capriciously in affirming Blue Cross' denial of reimbursement for expenses incurred in

---

[3]When a plan administrator, like Blue Cross in this case, "both evaluates claims for benefits and pays benefits claims," there is an inherent conflict of interest, *Metropolitan Life Ins. Co. v. Glenn*, --- U.S. ----, ----, 128 S.Ct. 2343, 2348 (2008), which the Supreme Court has recently instructed "should be weighed as a factor in determining whether there is an abuse of discretion," *id.* at 2350 (internal quotations omitted). In *Hancock*, the Tenth Circuit more recently described the treatment of such conflicts in light of *Glenn*:

> [A] conflict of interest affects the outcome at the margin, when we waver between affirmance and reversal. A conflict is more important when "circumstances suggest a higher likelihood that it affected the benefits decision," but less so when the conflicted party "has taken active steps to reduce potential bias and to promote accuracy."

*Hancock*, 590 F.3d at 1155 (quoting *Glenn*, 128 S.Ct. at 2351). Consequently, this court must reject the burden-shifting approach urged by the Plaintiff in this case, *viz.*, requiring Blue Cross to prove that its denial of benefits was not arbitrary and capricious. *See id.* (quoting *Glenn*, 128 S. Ct. at 2351 ("Neither do we believe it necessary or desirable for courts to creat special burden-of-proof rules. . . .")). Blue Cross' inherent conflict of interest is "but one factor among many that [we] must take into account." *Glenn*,128 S. Ct. at 2351.

connection with C.B.'s residential mental health treatment at Moonridge from February through August 2006, on the ground that Blue Cross' denial was not arbitrary and capricious and was supported by substantial evidence.

Plaintiff argues that the OPP and Blue Cross gave insufficient weight to the opinions and recommendations of the health care professionals who had examined and treated C.B. first-hand, and who recommended that she receive further treatment in a residential inpatient setting. In Plaintiff's view, "review of medical records alone in a psychiatric case . . . provides a very limited platform on which to base valid conclusions about the medical necessity of treatment in a mental health setting." (Plaintiff's Response to Defendant's Objection, filed December 1, 2008 (dkt. no. 41), at 5.) In such a case, "when there is a discrepancy between the opinions of treating and reviewing physicians, the authorities and rationale the Plaintiff relies on make[] clear that the conflict should be resolved in favor of the recommendations of the treating physician." (*Id.*) Plaintiff's counsel points out that it was "not until late June of 2006," over four months after her admission to Moonridge, that C.B. "became comfortable addressing one of the core issues underlying [her] behaviors: the fact that she had been sexually molested as a child." (Plaintiff's Memorandum of Points and Authorities in Support of Motion for Summary Judgment, filed September 29, 2008 (dkt. no. 32), at 23.)

Blue Cross attempts to minimize the importance of in-person diagnosis, evaluation and recommendations by arguing that "'[w]hen faced with conflicting medical evidence, as in this case, the plan administrator's decision is not arbitrary and capricious simply because it conflicts with the assessment of plaintiff's treating physicians.'" (Defendant's Opposition to Plaintiff's Motion for Summary Judgment, filed October 17, 2008 (dkt. no. 34), at 7 (quoting *Lewis v.*

*Broadspire Servs.*, 2006 U.S. Dist. LEXIS 74577 (N.D. Oka 2006)).)[4]

Under its contract with Plaintiff's employer, Blue Cross "has chosen to guarantee medically necessary services to plan participants," *Rush Prudential HMO, Inc. v. Moran*, 536 U.S. at 380 n.10, but has not guaranteed the best treatment, the treatment prescribed or recommended by a plan participant's treating physician or psychologist, or the treatment option preferred by a plan participant with an ill child. Nor is Blue Cross obligated under its contract to defer to a treating physician's choice of treatment options or evaluation of which course of treatment is "medically necessary." Blue Cross has expressly reserved that determination to itself.

Having arrogated to itself the contractual authority to second-guess the health treatment choices of an ill child's parents and the first-hand diagnostic evaluations and treatment recommendations of a child's physicians and psychologists, Blue Cross may well have the discretionary power to excuse itself from paying for C.B.'s residential mental health treatment, even though her visible progress while under such care would appear to vindicate her own psychologist's recommendation that she be placed there. Blue Cross having granted itself such discretion by contract, the pertinent federal statute in turn accords its exercise of that discretion only the most deferential review, should the matter make its way into court. By enforcing an "arbitrary or capricious" standard of judicial review, ERISA insulates Blue Cross' second-

---

[4]Blue Cross makes the remarkable assertion that "this case does not involve a disputed diagnosis but rather, as Plaintiff acknowledges, a determination about whether treatment at a particular level of care was reimbursable. Level of care determinations involve interpretation of policy coverage conditions that do not turn on personal examination or even necessarily involve medical judgments." (Defendant's Opposition to Plaintiff's Motion for Summary Judgment, filed October 17, 2008 (dkt. no. 34), at 7.) Blue Cross asserts that its and OPP's reviewers "determined whether residential treatment was reimbursable under Plaintiff's policy," and that "Camille's treating physicians, who had no idea what the terms of Camille's policy were, made no such determination." (*Id.* at 7-8 (footnote omitted).) To argue that a *medical necessity* review does not "necessarily involve medical judgments" defies common sense, particularly where the proffered level of care criteria look to the *severity* of the patient's illness, not merely the ascribed diagnostic category.

guessing of a treating physician's or a parent's choice of treatment options from further second-guessing by a reviewing court.

To say that C.B. would have responded to treatment and made the same gains had she traveled the road *not* taken in this case—namely, outpatient therapy—seems speculative at best. Layers of generalized criteria, trademarked or not, seldom yield a prescriptive remedy that proves to be ideally suited to the individualized factual context of a specific case. The prospect of being more readily reimbursed for the lesser cost of what likely would be less effective, maybe even *ineffectual* treatment options seems to miss the point of a parent seeking mental health care for an ill child in the first place: to choose the treatment option with the best chance of success.

Nevertheless, like those who have already reviewed the Plaintiff's claim for health benefits in this case, this court's review is confined to the papers alone, with no direct first-hand observation or evaluation of the child involved, either at the critical moment the choice to admit was made in February of 2006, or since. Those who examine only paper—even courts—find themselves at a distinct disadvantage when it comes to evaluating the genuine needs of a living, breathing human being in distress.

The health care professionals who had the advantage of first-hand contact with C.B. recommended in January 2006 that C.B. "should be placed in a strong therapeutic boarding school or residential treatment center." Relying on C.B.'s medical records, Blue Cross and the external reviewing physicians disagree, opining that some less intensive—and significantly less expensive—course of treatment was all that was warranted by C.B.'s circumstances.[5]

_____

[5]Less expensive palliatives like "outpatient therapy" may come with significant hidden costs of their own. For example, about two hours after attending his outpatient therapy appointment on March 31, 2008, Bernard Allen, a twenty-

(continued...)

Given the very deferential standard of review that applies in this instance, it ultimately matters not whether this court disagrees with the conclusions of the Blue Cross and OPP reviewing physicians, or whether upon the evidence in this record, a reasonable person could find that those conclusions were wrong. To survive review under § 502 of ERISA, Blue Cross' decision denying benefits "'need not be the only logical one nor even the best one. It need only be sufficiently supported by facts within [its] knowledge to counter a claim that it was arbitrary or capricious. The decision will be upheld unless it is not grounded on any reasonable basis.'" *Hancock*, 590 F.3d at 1155 (quoting *Finley v. Hewlett-Packard Co. Employee Benefits Org. Income Prot. Plan*, 379 F.3d 1168, 1176 (10th Cir. 2004) (internal quotation marks omitted)).

Having reviewed the materials in the record in light of the applicable standard of review, and having considered the arguments of counsel, this court concludes that although Blue Cross' decision denying reimbursement appears to have taken a more draconian view of what was "medically necessary" in C.B.'s case in February of 2006 than either her treating professionals took at that time or this court would now adopt on *de novo* review, it cannot fairly be said that the OPP's decision affirming Blue Cross' denial was "not grounded on any reasonable basis," and was therefore arbitrary and capricious.

For that reason, this court concludes that Blue Cross' motion for summary judgment (dkt.

---

[5](...continued)

five-year-old who had been previously diagnosed with schizoaffective disorder, purchased an eight-inch butcher's knife at a small store in the Fiesta Mall in Mesa, Arizona. Approximately ten minutes later, he walked into a food court restroom and stabbed a young man named Issurah Jackson in the back, killing him almost instantly. When police arrived at the mall, they found Allen outside on a bench with the bloody knife. Further investigation revealed that Allen had attacked another man at a department store in the mall the day before, stabbing him in the throat with a pocket knife and seriously injuring him, and that Allen had then fled the store. Allen told police he didn't know either of the victims, but felt remorse for both of them afterward. Allen subsequently pleaded guilty to a State murder charge and in August of 2009 was sentenced to life in prison without the possibility of parole.

no. 29) is GRANTED and Plaintiff's motion for summary judgment (dkt. no. 31) is DENIED.

Let judgment be entered accordingly.

**SO ORDERED.**

DATED this 26 day of March, 2010.

BY THE COURT:

Bruce S. Jenkins
United States Senior District Judge